

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 10, 2024.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-10615-smr** |
| **DURO LEGACY HVAC, INC.** | § | |
| | § | **CHAPTER 11;** |
| | § | **SUBCHAPTER V** |
| **DEBTOR** | § | |

### ORDER CONFIRMING DEBTOR'S
### PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(a)

On March 4, 2024, the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Amended Plan of Reorganization under Subchapter V of Chapter 11 (the "Plan")[1] filed by Duro Legacy HVAC, Inc. (the "Debtor") on January 26, 2024 (Docket No. 72). Present or making appearances at the hearing were Frank Lyon, counsel for the Debtor, the Debtor's representative, Victor Olowu, the Subchapter V Trustee appointed in the case, Michael Colvard, (hereinafter "Sub V Trustee"), and counsel for certain creditors who have entered an

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

appearance in the case. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on August 9, 2023 (the "<u>Petition Date</u>") and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

B.      This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1191(a).

3

F.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.      The Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 filed by the Debtor on January 26, 2024 (Docket No. 72) and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a consensual plan pursuant to 11 U.S.C. § 1191(a), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.      The effective date of the Plan shall be fourteen days from the entry of this Order ("Effective Date"), notwithstanding anything to the contrary in the Plan.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the

4

Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.      The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

8.      Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in its sole discretion, evaluate and determine whether to pursue any such retained claims.

9.      Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's

5

proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

10.     On the Effective Date, Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

11.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

12.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

13.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

14.     The services of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan, and the Debtor is to file and serve a Notice of Substantial Consummation upon the Subchapter V Trustee, the U.S. Trustee, and all parties-in-interest within fourteen (14) days following substantial consummation as required under 11 U.S.C. § 1183(c)(1) and (2).

6

15.     This Confirmation Order is a final order and effective and enforceable immediately

upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

# # #

# EXHIBIT
# A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DURO LEGACY HVAC, INC.** | § | **CASE NO. 23-10615-SMR** |
| | § | |
| **Debtor in Possession** | § | **(Chapter 11)** |
| | § | |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**
**DATED JANUARY 26, 2024**

Frank B. Lyon
Physical Address:
3800 N. Lamar - Suite 200
Austin, Texas 78756
Mailing Address:
Post Office Box 50210
Austin, Texas  78763
(512) 345-8964
(512) 697-0047 (facsimile)

ATTORNEY FOR
DURO LEGACY HVAC, INC.
DEBTOR-IN-POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DURO LEGACY HVAC, INC.** | § | **CASE NO. 23-10615-SMR** |
| | § | |
| **Debtor in Possession** | § | **Chapter 11** |
| | § | **Subchapter V** |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**
**DATED JANUARY 26, 2024**

    Duro Legacy HVAC, Inc., the debtor herein (hereinafter referred to as the "Debtor") propose the following Plan of Reorganization ("Plan") Dated November 7, 2023, pursuant to Subchapter V of Chapter 11, Title 11, United States Code ("Bankruptcy Code" or "Code").

**ARTICLE I**
**DEFINITIONS AND USE OF TERMS**

    1.01    **Defined Terms.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

    1.02    **Supplemental Terms.** The following supplement defined terms in the Code.

    1.02(a)    **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against either or both of the Debtor or his property under 28 U.S.C. § 1930, which arose after August 9, 2023.

    1.02(b)    **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

    1.02(c)    **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an

interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.02(d)    **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor's case.

1.02(e)    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's case.

1.02(f)    **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.  The Bar Date in this Case was October 18, 2023.

1.02(g)    **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

1.02(h)    **Case** means this Subchapter V Case.

1.02(i)    **Claimant** means any person or entity having or asserting a Claim in this case.

1.02(j)    **Class** or **Classes** mean all of the Claims that the Debtor has designated pursuant to 11 U.S.C. § 1190, as described in Article V of this Plan.

1.02(k)    **Confirmation** means the entry by the Bankruptcy Court of an order confirming this Plan.

1.02(l)    **Confirmation Date** means the date the Confirmation Order is entered.

1.02(m)    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1191.

1.02(o)    **Debtor** means Duro Legacy HVAC, Inc.

1.02(p)    **Disposable Income** means the Debtor's "disposable income" as measured under 11 U.S.C. § 1191(c).

1.02(q)    **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.02(r)  **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

1.02(s)  **Estate** means the estate created pursuant to 11 U.S.C. §§ 541 and 1186 with respect to the Debtor.

1.02(t)  **Fee Claim** means a Claim under 11 U.S.C. § 330 or § 503 for allowance of compensation and reimbursement of expenses to professionals in this Case.

1.02(u)  **Filed** means delivered to the Clerk of the Bankruptcy Court or filed electronically with the Bankruptcy Court.

1.02(v)  **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.02(w)  **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.02(x)  **Petition Date** means August 9, 2023, the date on which the Debtor filed his petition for relief in this Case.

1.02(y)  **Pre-petition** means prior to the Petition Date.

1.02(z)  **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.02(aa)  **Pro-Rata** means proportionately, based on the percentage that the amount of a Claim is of the total of Allowed Claims in its Class.

1.02(bb)  **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

      1.02(cc)      **Reorganized Debtor** means the Debtor after the Effective Date of the Plan.

      1.02(dd)      The **Rules** means the Bankruptcy Rules.

      1.02(ee)      **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

      1.02(ff)      **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

      1.02(gg)      **Unsecured Claim** means any claim against the Estate that is not a Secured or Administrative Claim.

    1.03    **Gender.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.

    1.04    **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

    1.05    **Computation of Time.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

**ARTICLE II**
**BASIS OF PLAN**

    2.01    **Generally.**  The Plan is a plan of reorganization.  Funding for the Plan will come from the Debtor's business operations.

**ARTICLE III**
**HISTORY OF THE DEBTOR'S OPERATIONS**

    3.01    **History of the Debtor's Operations.**  The Debtor was organized as a Texas Corporation on February 12, 2019 to purchase the assets of Cen-Tex Air Balance, Inc. which purchase was completed in March 2019. The Debtor is in the business of testing and balancing HVAC systems in Central Texas. The Debtor borrowed $1,155,000 from the U.S. Small Business Administration to finance the purchase. The SBA also provided a $250,000 loan for operating capital. During the pandemic, the Debtor received a $495,000 EIDL loan from the SBA. As its customers, who are primarily general contractors, began to stretch out the length of time between work being completed and payment, the Debtor turned to merchant advance

lenders to make ends meet. The Debtor's cash flow did not support the repayment terms of the the SBA or the merchant advance lenders, leading to the filing of this case.

## ARTICLE IV
## PROVISIONS APPLICABLE TO ALL CLAIMS

4.01    **Treatment of Claims.**  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

4.02    **Allowed Claims**.  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

4.03    **Amount of Claims**.  If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control, unless the holder of the Claim has timely filed a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim.  If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control unless a party in interest files an objection to the Claim.  If a party in interest files an objection to a proof of claim or a scheduled Claim, then the amount determined by the Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

4.04    **Allowance of Post-Petition Interest, Fees and Costs**.  Unless otherwise provided, a Claim shall not be entitled to post-petition interest, fees or costs.

4.05    **Filing of Administrative Claims**.  Any requests for allowance of an Administrative Expense Claim shall be filed no later than sixty (60) days after the Effective Date or shall be barred.

4.06    **Filing of Requests for Post-Petition Fees or Costs**.  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed no later than (60) days after the Effective Date or shall be barred.

4.07    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such Claim is filed. Any proof of claim filed after the applicable Bar Date set by the Court shall be of no force and effect and shall be deemed disallowed.

4.08    Any objection must comply with Local Bankruptcy Rule 3007, be in writing, set out the name of the Creditor who filed the Claim (and any assignee), the dollar amount of the Claim and the character of the Claim.  Each specific ground for objection or defense to the Claim shall be listed in a separate paragraph.  Service of the objection shall be made upon the attorney of record for the Claimant (or the Creditor directly if not represented by an attorney), the attorney for the Debtor, and any other party entitled to notice under Local Rule 3007.  A certificate of service shall be included in each objection and shall comply with Local Bankruptcy Rule 9013(f).

4.09    If an objection to a Claim is filed the holder of the Claim may file a response only within twenty-one (21) days from the mailing date set out in the certificate of service for the objection.  Responses may take one of two forms, namely a consent to the objection, or a non-consenting response.  A non-consenting response shall state specific reasons for objection to each ground or defense relied upon by the non-consenting party to support allowance of the Claim.  Copies of such response shall be served upon the Debtor and his attorney, Frank Lyon.  Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the 21-day response period, the Court may enter an order without further notice or hearing.  In the event a timely non-consenting response is filed, the Court shall set a hearing.

4.10    All Contested Claims shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

4.11    **Distributions on Disputed Claims.**  If a Claim is not scheduled or is scheduled in the Debtor's Schedules of Liabilities as disputed, contingent or unliquidated, no distribution shall be made to the holder of such a Claim unless a proof of claim was filed by:

(a)    October 18, 2023, which was the Bar Date established by the Bankruptcy Court or,

(b)    by the date 45 days after the Confirmation Date, if such Claim is a Claim for either (i) damages for rejection at Confirmation of this Plan of an executory contract or (ii) a deficiency created after surrender of property under the Plan.

In addition, no distribution shall be made to the holder of a Claim so long as an objection to the Claim is pending; rather, the amount of the payment shall be held in reserve by the Debtor until the objection is resolved.  If an objection to a Class 1 Claim is sustained, the Debtor will distribute the amount of the Claim *pro rata* to the holders of the remaining Claims in Class 1 along with the next payment to Class, and shall re-calculate all future *pro rata* payments on each of the Class 1 Claims remaining. If an objection is overruled, at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls, the Debtor shall pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claims in the Class.

4.12    If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the

extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim. In addition, any party authorized by the Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

**ARTICLE V**
**ADMINISTRATIVE AND PRIORITY CREDITORS**

5.01   **Administrative Expenses.** Each holder of an administrative expense claim allowed under § 503 of the Code shall be paid upon such terms agreed upon between the Debtor and the holder of such claim. In the event of a non-consensual confirmation of this plan under Section 1191(b) of the Code, the respective administrative expense claims shall be paid in 12 equal monthly installments.

**ARTICLE VI**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

6.01   **Classification.** Claims and interests are classified as follows:

**Class 1.**   Allowed Secured Claim of Home Trust Bank / SBA

**Class 2.**   Allowed Administrative Convenience Claims, consisting of Allowed General Unsecured Claims of $1,000.00 or less, and Allowed General Unsecured Claims the holders of which each agree to reduce their Claim to $1,000.00.

**Class 3.**   Allowed General Unsecured Claims other than the Claims in Class 2.

**Class 4.**   Equity Interests in the Debtor.

6.02   **Claims Deemed Wholly Unsecured.** Other than Classes 1 and 4, all other Claims shall be deemed wholly Unsecured as of Confirmation and included in either Class 2 or Class 3, as applicable. This includes, but is not limited to, the Claims of:

a)   the SBA for the EIDL loan of $495,000
b)   American Express
c)   Cen-Tex Air Balance, Inc.
d)   JPMorgan Chase Bank and its affiliates
e)   Fora Financial Advance, LLC
f)   Randy Eastlack
g)   Victor Olowu
h)   WeBank

## ARTICLE VII
## TREATMENT OF CLAIMS AND INTERESTS

7.01    **Class 1 Claim - Allowed Secured Claim of Home Trust Bank / SBA**.  Home Trust Bank / SBA shall have an Allowed Secured Claim in the amount of $193,408.13, which shall be paid in 48 equal monthly installments with interest at a fixed rate of 6.0% beginning on the Effective Date. The amount of each monthly installment shall be $4,542.20 The balance of the Allowed Claim of Home Trust Bank / SBA shall be a Class 3 claim. Class 1 is Impaired.

7.02    **Class 2 Claims - Allowed Administrative Convenience Claims, consisting of Allowed General Unsecured Claims of $1,000.00 or less, and Allowed General Unsecured Claims the holders of which each agree to reduce their Claim to $1,000.00**.  Each holder of an Allowed Unsecured Claim of $1,000.00 or less shall be given the option to be treated as Class 3 creditor or to be paid the lesser of $100.00 or the Allowed Amount of such Claim in cash on the Effective Date.  Any holder of an Allowed Class 3 Claim of $1,000.00 or more may opt into Class 2 and shall be deemed to have not only agreed to reduce the Claim as scheduled or filed to an Allowed Claim of $1,000.00, but also to be paid as a Class 2 Claim on the Effective Date and to accept such payment in full satisfaction of its Claim. Class 2 is Impaired.

7.03    **Class 3 Claims – All Other General Unsecured Claims.**  All Allowed Class 3 Claims, which shall not accrue interest, shall be given the option to be treated as a Class 2 Claim in the Allowed Amount of $1,000.00 or to be paid monthly *pro rata* from the Debtor's Disposable Income for the 48 months of the Plan. Class 3 claims are estimated to receive 18.2% of the Allowed Amounts of their Claims over the life of the Plan. Please see Exhibit A for estimated distributions to each member of Class 3. Class 3 is Impaired.

7.04    **Class 4 – Equity Interests in the Debtor.**  The owners of the equity interests in the Debtor shall maintain their equity interests; however, no payments shall be made to the owners of the equity interests in the Debtor on account of such equity interests over the 48 months of the Plan. Class 4 is Impaired.

## ARTICLE VIII
## IMPLEMENTATION OF THE PLAN

8.01    **Implementation of the Plan.**  The Debtor will continue to operate its business, and the income from the business will be used to fund the Plan.

8.02    **Reserve.**  One reason the Debtor filed this case was due to cash flow problems, rendering the Debtor unable to meet ongoing expenses. In order to avoid a recurrence of such a situation and to help make the plan feasible, the Plan calls for the establishment of a reserve of $80,000 as shown in Exhibit A. $80,000 represents the average monthly operating expenses of the Debtor, together with the monthly payment on Class 1 secured claims.

As a practical matter, the Debtor cannot distribute all of its net income every month. For example, assume that the Debtor's net income is $10,000 in a given month after payment of all of its ordinary operating expenses such as payroll, payroll taxes, purchase of materials, insurance, rent, payments to administrative claimants, payments to Classes 1 through 3 Creditors and all of the other ordinary expenses that an entity in the Debtor's business must pay to operate that are due in that month. The Debtor pays its employees in arrears every other Friday. If the Debtor distributes all $10,000.00 of its net income at the end of a month – leaving no cash in the bank – the Debtor will have between one and thirteen days (depending on when the end of the month falls) to collect enough funds to cover its usual bi-weekly payroll, payroll taxes, rent and all of the other expenses that come due that period. It was a cash flow crunch that caused the Debtor to take out additional loans, which in turn created another cash flow crunch. Requiring the Debtor to empty its bank accounts at the end of every month would re-create the same scenario that put the Debtor in this case. The reserve will give the Debtor the cash cushion that it needs in order to not only operate, but to fulfill its obligations under this Plan.

If the Debtor must dip into its reserve to pay its ordinary operating expenses, the payments due to administrative claimants or the payments due to Classes 1 through 3, the Debtor may recoup the amount needed to restore the reserve to $80,000.00 when calculating Disposable Income for the next month.

This is a 48 month plan rather than a 36 month plan. Extension of the Plan term to 48 months allows the Debtor to compensate for the accumulation of the reserve.

8.03 **In General.** If the Plan is approved by the Court, a Confirmation Order will be entered. The Debtor will continue to operate as debtor-in-possession and discharge its duties under the Code until the Effective Date of the Plan. Upon the Effective Date of the Plan, the Reorganized Debtor will continue to operate for the benefit of its Creditors in compliance with the terms of the confirmed Plan.

8.04 **Authorization.** The Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code. To this end, the Debtor is authorized and directed to execute all documents necessary to effectuate the terms of the Plan.

8.05 **Reliance on other Parties.** In connection with the Plan, the Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by it and such reliance shall presumptively establish good faith.

8.06 **Projections.** The projections attached as Exhibit A are estimations. Where actual revenue varies from the projections, actual revenue (collections) will be used to calculate Disposable Income for purposes of determining amounts to be distributed to Class 3. The Debtor believes that revenue will remain at or above the levels projected in Exhibit A because the Debtor's business has stabilized. In addition, the Debtor's business is typically better in the warmer months.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01   **Plan Binding.**  Pursuant to 11 U.S.C. §§ 1141 and 1191, the provisions of the confirmed Plan shall bind the Debtor and each of the Creditors, whether or not the Creditor's Claim is impaired under the Plan and whether or not such Creditor has accepted the Plan.  The distributions provided for Creditors shall not be subject to any claim by another Creditor by reason of any assertion of a contractual right of subordination.

9.02   **Status of Property upon Confirmation**. Property of the Estate shall vest in the Debtor following Confirmation.

9.03   **Automatic Stay Continues after Confirmation**. The automatic stay imposed under §362 of the Bankruptcy Code shall continue, after Confirmation until the earliest of discharge of the Debtor, or dismissal or closing of the Case, to prevent Creditor collection efforts other than as provided in the Plan.

9.04   **Treatment of Unexpired Leases and Executory Contracts.**  Confirmation of the Plan shall act as the assumption by the Debtor of any unexpired leases and executory contracts to which it is a party. **The deadline for filing a Claim resulting from a rejection of a contract or lease shall be forty-five (45) days after the Confirmation Date.**

9.05   **Release of Liens of Unsecured Creditors.**  Confirmation of the Plan shall be a determination that all Claims described in Section 6.02 are Unsecured and that all liens claimed by such creditors are released. The Debtor shall be authorized to execute and file with the appropriate authority releases of any and all such liens upon confirmation.

9.06   **Liens of Home Trust Bank / SBA.**  The Liens of Home Trust Bank / SBA based upon the $1,155,000 and $250,000 notes described herein shall remain in full force and effect upon Confirmation, but shall be deemed released upon the Debtor's payment of the amounts provided in Section 7.01. The Debtor shall be authorized to execute and file with the appropriate authorities releases of such liens upon payment of the amounts provided for in section 7.01.

## ARTICLE X
## CONFIRMATION UNDER §1191 (b)

10.01   If the Plan is confirmed under §1191 (b) as a non-consensual plan and the SubV Trustee is required to act as the disbursing agent he/she shall have the following duties.

a)   Sub V Trustee Duties Post Confirmation: The Sub V Trustee shall act as disbursing agent.

b)   During the payment period, the Sub V Trustee shall make all payments of distributions to creditors from the Plan payments other than post-petition cured monthly mortgage payments. Such remittances shall occur no less frequently than

fifteen (15) days after the first day of each month following receipt of a Plan payment from the Reorganized Debtor following finalization of claims objections. The Sub V Trustee shall make such distributions out from an account to be established by the Sub V Trustee at an institution on the approved U.S. Trustee depository list account, which shall be maintained by the Sub V Trustee for the duration of the payment period until Plan consummation following the final payment required under the Plan (the "Sub V Trustee Account").

c) Disbursements to Allowed Claimants. As soon as is reasonably practicable after the Effective Date and following claims objections resolutions, the Sub V Trustee shall initiate disbursement of Plan payments from the Sub V Trustee Account, less amounts reserved for the Sub V Trustee's fees and expenses, to the holders of Allowed Claims in the provisions provided under the confirmed Plan, on a pro rata basis based on the total amount of Allowed Claims. For the avoidance of doubt, the disbursement to holders of Allowed Claims will be reduced in an amount equal to the Sub V Trustee's fees and costs incurred as Sub V Trustee and allowed in accordance with subparagraph (k) herein. The Reorganized Debtor shall provide a list of claims, including Allowed Claims and disputed claims to the Sub V Trustee on or about the same time when funds are delivered directing the Sub V Trustee which claims are "allowed claims" entitled to distribution, which claims are unresolved requiring the Sub V Trustee to withhold funds as required in subparagraph (e) herein and which claims constitute disallowed claims entitled to no distribution. The Reorganized Debtor shall file any claim objection within 30 days after the Effective Date – and confirm all Allowed Claims to be paid under the Plan.

d) Addresses for Disbursements. Disbursements shall occur by check drawn on the Trustee Account and may be delivered by the Sub V Trustee to (i) the address for payment set forth on a proof of claim filed by the Holder or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to the Sub V Trustee at Michael G. Colvard, Martin & Drought, P.C., 112 East Pecan Street, Suite 1616, San Antonio, TX 78205, or (iii) if the Holder has not filed a proof of claim or otherwise provided the Trustee with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtor in this case. If any distribution to a Holder of an Allowed Unsecured Claim is returned to the Sub V Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the Sub V Trustee is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of the Sub V Trustee until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, the Sub V Trustee is unable to obtain the information necessary to deliver a distribution within six months following the return of the

undeliverable distribution, the Sub V Trustee shall be authorized to treat such Holder's current and future claims as an Unclaimed Distribution (defined below).

e) No Fractional Disbursements. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions. Further, if the actual monthly distribution claim as allowed claim is less than $100.00 no payment to a creditor shall occur unless the distribution in excess of $100.00 on or before the next annual payment date following the Effective Date.

f) Time Bar to Cash Distributions. Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check issued by the Sub V Trustee on account of distribution. If a Holder fails to negotiate a disbursement check within this 120-day period, the Trustee shall have the right to void the check, and any current and future claims of such Holder to the Dividend shall be treated as an Unclaimed Distribution (defined below).

g) Unclaimed Distributions and Reversion. Any distribution made by the Sub V Trustee to a Holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of address, cannot be made on account of such Holder's failure to comply with the Withholding Requirements set forth in subparagraph (e) above, or has not been negotiated within 120 days from the date of issuance on the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtor and held by the Sub V Trustee within the Sub V Trustee Account. The Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Unclaimed Distributions shall be distributed by the Sub V Trustee to the remaining Holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the Plan as if the Claim underlying such Unclaimed Distribution had been disallowed.

h) No Liability. Following entry of the Confirmation Order, any disbursements made by the Trustee on account of a Claim are deemed authorized disbursements, and the Sub V Trustee shall have no liability for these disbursements. The Sub V Trustee's obligations are limited to acting as the disbursement agent under the Plan, and the Sub V Trustee shall have no liability to any person in the event that the Reorganized Debtor fails to timely deliver payments to the Sub V Trustee, or otherwise fails to perform its obligations under the Plan. The Sub V Trustee shall have no obligation to disburse Dividend Payments unless and until he determines that there are adequate funds in the Sub V Trustee Account to cover a distribution

to Holders, net of the Sub V Trustee's fees and costs. The Sub V Trustee shall not have any obligations to pursue and/or manage the Reorganized Debtor's pursuit of Causes of Action.

i)   Reporting. The Sub V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Sub V Trustee shall file his final report and seek a discharge of his duties as Sub V Trustee.

j)   Notices. The Sub V Trustee may limit notice of any and all reports, documents, pleadings or other filings related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Sub V Trustee shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

k)   Post-Confirmation Fees and Expenses of the Sub V Trustee. The Sub V Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Sub V Trustee under this paragraph from the Plan Payments of $400 per month for post confirmation administration of plan obligations, and in addition thereto, shall be entitled to reasonable attorney's fees in the event of that other non-administrative post-confirmation attorney services are required. The Sub V Trustee shall submit a fee and expenses statement to the Reorganized Debtor, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties"). The Sub V Trustee shall be compensated for his non-administrative post-confirmation duties at his normal hourly rate and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the Reorganized Debtor to the Sub V Trustee. The Sub V Trustee's fees and expense shall be disclosed in the reports filed with the Court. All parties in interest will have 21 days after the reports are filed to object to the Sub V Trustee's fees and expenses disclosed therein. If no objection is received, the Sub V Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

l)   Debtor may engage post-confirmation counsel who shall be entitled to reasonable fees and expenses to be paid out of plan proceeds, following compliance with proceedings set forth in ¶ k above and in addition, post confirmation counsel for Debtor is required delivery to the Trustee, a true and correct copy of all post confirmation fee and expense statements, if confirmed under § 1191(b).

m)   Distributions by the Sub V Trustee on Disputed Claims. Except as otherwise provided in the Plan, no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Holder who holds both an Allowed Claim and

a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Unsecured Claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Sub V Trustee subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Sub V Trustee will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Sub V Trustee will make withheld funds available to allowed claim holders within the next payment period.

n) In the event that the Reorganized Debtor is to make payments to creditors under the Plan, the Plan and not the Sub V Trustee as provided under 11 U.S.C. § 1194(b), Debtor should provide monthly reports to the Trustee confirming Plan payments.

o) Additional Post-Confirmation Duties of the Sub V Trustee. In addition to the duties set forth above and as set forth under 11 U.S.C. § 1183, duties and power of the Sub V Trustee should include those relating to:

    i. The right to appear and be heard in any post-confirmation hearing in relation to any issue arising within the post confirmation affairs of the reorganized Debtor;

    ii. Right to acquire required bonding, which costs are to be satisfied out of Debtor's Plan Payments under 11 U.S.C. §1191(d);

    iii. Right to take all steps necessary to ascertain allowed claim amounts, to prepare and issue claims recommendations and to obtain court determinations on amounts of allowed claims and distributions; and

    iv. Right to review post-confirmation accounting and bank statements and accounting records; and,

## ARTICLE XI
## LIQUIDATION ANALYSIS

11.01   The Code requires that the Plan provide a liquidation analysis so that creditors can compare what they would receive under the Plan versus a hypothetical liquidation of the Debtor's assets under Chapter 7 of the Code. The Debtor estimates that a liquidation of the Debtor's assets would result in the following:

| Assets | Value | At Liquidation | % of Value at Liquidation |
|---|---|---|---|
| Estimated Cash on Hand at Closing | $10,000 | $10,000 | 100% |
| Furniture, Fixtures, and Equipment* | $36,165 | $18,133 | 50% |
| Accounts Receivable* | $150,000 | $135,000 | 90% |
| Total | $196,165 | $163,133 | 83% |

*Subject to first lien of Home Trust Bank / SBA

Secured Claims:

| | |
|---|---|
| Home Trust Bank / SBA* | $1,077,529.58 |
| Total | $1,077,529.58 |

*Per proof of claim #7

Priority Claims:

| | |
|---|---|
| None | $-0- |

Total Secured & Priority Claims:    $1,077,529.58

Gross Amount to be Distributed:

| | |
|---|---|
| Liquidation value from above | $163,133 |

Distribution to Home Trust Bank/SBA

| | |
|---|---|
| Furniture, Fixtures & Equipment | $18,133 |
| Less 10% Auction Fee | ($1,813) |
| Accounts Receivable | $135,000 |
| Total | $151,320 |

Calculation of Chapter 7 Trustee Fees:

| | |
|---|---|
| 25% of first $5,000 | $1,250 |
| 10% of ($50,000-$5,001) $44,999. | $4,450 |
| 5% of ($163,133-$50,001) $113,132. | $5,657 |
| | $11,357 |

Available for Unsecured Creditors:

| | |
|---|---|
| Liquidation Value from Above | $163,133 |
| Chapter 7 Trustee Fee | ($11,357) |
| Home Trust Bank | ($151,320) |
| Remainder | $456 |

Estimated Unsecured Claims (including deficiency claims):

| | |
|---|---|
| Home Trust Bank/SBA | |
| $1,077,530 - $151,320 = | $926,210.00 |

Proofs of Claim filed*:

| | |
|---|---|
| Cen-Tex Air Balance, LLC | $ 62,163.70 |
| JPMorgan Chase Bank, N.A. | $ 26,797.20 |
| JPMorgan Chase Bank, N.A. | $ 36,794.72 |
| American Express Natl Bank | $ 906.38 |
| Verizon Wireless | $ 1,963.65 |
| Randy Eastlack | $ 25,000.00 |

No Proofs of Claim filed:

| | |
|---|---|
| American Express | $ 12,449.00 |
| Fora Financial Advance, LLC | $ 68,628.00 |
| SBA EIDL | $ 495,000.00 |
| WeBank | $ 14,925.00 |

Total Unsecured Claims      $1,670,837.60

*Debtor does not dispute these claims, except that the claim of Cen-Tex Air Balance, LLC is wholly unsecured as set forth in Section 6.02.

**Estimated distribution to unsecured creditors:**

Net Available for Unsecured Creditors:
  $456 / Total Unsecured Claims of $1,628,749.65= 0.03%

## ARTICLE XII
## PROJECTIONS

12.01 Attached hereto as Exhibit A are the Debtor's projections with respect to the ability of the Debtor to make payments under the Plan.

## ARTICLE XIII
## DISCHARGE

13.01  If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before Confirmation, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

     i.     Imposed by this plan
    ii.     To the extent provided in § 1141(d)(6).

13.02  If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

i.  On which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

ii. Excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XIV
## RETENTION OF JURISDICTION

14.01  After confirmation, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the confirmation, to hear and determine all causes of action that exist in the favor of the Debtor that arise prior to the confirmation, to hear and determine all matters relating to the administration of the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with the Code, including interpretation and implementation of the Plan.

## ARTICLE XV
## DEFAULT AND OTHER RELATED PROVISIONS

15.01  **General.**       In the event of a default by the Debtor under the Plan, creditors may exercise any rights granted to them under documents executed to evidence the Plan or any right available to creditors under applicable non bankruptcy law.  In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract.  Nothwithstanding any other provision, any creditor alleging a default shall give the Debtor thirty (30) days notice and an opportunity to cure before exercising any righs available upon default.

15.02  In the event of a default by a creditor, Debtor may enforce this plan as a contract in a court of competent jurisdiction.  The Debtor may escrow payments to any creditor which defaults under the Plan until the default is cured.  The Debtor shall give the creditor thirty (30) days notice an an opportunity to cure before exercising this provision.

15.03  Conversion to Chapter 7 shall be an additional remedy for default prior to substantial consummation of the Plan.  The Debtor may voluntarily convert their case to one under Chapter 7 at anytime prior to discharge.

## ARTICLE XVI
## MISCELLANEOUS

16.01  **Request for Relief under 11 U.S.C. § 1191(b)**.  In the event any impaired Class fails to accept this Plan in accordance with 11 U.S.C. § 1191(a), the Debtor reserves the right to, and does hereby request the Court to, confirm the Plan in accordance with 11 U.S.C. § 1191(b).

16.02  **Voided Checks.**  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests

for reissuance of any check shall be made to the Debtor's attorney, Frank B. Lyon, at PO Box 50210, Austin, Texas 78763, and by email to frank@franklyon.com, by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check must be made to the Debtor's attorney in writing within 180 days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

16.03  **Governing Law.**  Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

DATED this 26th day of January, 2024.


LAW OFFICES OF FRANK B. LYON
Physical Address:

3800 North Lamar Boulevard, Suite 200
Austin, Texas 78756
Mailing Address:
Post Office Box 50210
Austin, Texas 78763
(512) 345-8964
(512) 697-0047 (fax)

Email:  frank@franklyon.com


By:  _/s/ Frank B. Lyon_____
      FRANK B. LYON
      State Bar No. 12739800
      ATTORNEY FOR DEBTOR,
      Duro-Legacy HVAC, Inc


      Duro Legacy HVAC, Inc.
By: _/s/ Victor Olowu_
      Victor Olowu, President

## CERTIFICATE OF SERVICE

I, Frank B. Lyon, counsel for the Debtor in Possession, by my signature below, hereby certify that on the 26th day of January, 2024, a true and correct copy of the foregoing Plan of Reorganization was served via the Court's CM/ECF system to all parties requesting notice thereby and to the persons shown below by first class US mail:

**United States Trustee**

Casey Roy – Office of the United States
Trustee
903 San Jacinto Blvd., Suite 230
Austin, TX 78701
Email: casey.roy@usdoj.gov
*ECF notification*

**Subchapter V Trustee**
Michael Colvard
112 East Pecan Street, Suite 1616
San Antonio, TX 78205
Email: mcolvard@mdtlaw.com
*ECF notification*

**Counsel for Home Trust Bank**
Daniel P. Callahan
Kessler Collins, P.C.
500 N. Akard Street, Suite 3700
Dallas, Texas 75201
Email: dpc@kesslercollins.com
*ECF notification*

**Debtor**
Duro Legacy HVAC, Inc.
Attention: Victor Olowu
16333 S. Great Oaks Drive, Suite 401
Round Rock, Texas 78681
*Via email*: victor@centex-air.com


*/s/ Frank B. Lyon*
Frank B. Lyon

# EXHIBIT
# A

| | Monthly Going Forward | | | | | | | | | | | | Yearly | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4/1/24 | 5/1/24 | 6/1/24 | 7/1/24 | 8/1/24 | 9/1/24 | 10/1/24 | 11/1/24 | 12/1/24 | 1/1/25 | 2/1/25 | 3/1/25 | Year 2 | Year 3 | Year 4 | Total |
| Billings (Uncollected Invoicing) | $85,000 | $85,000 | $85,000 | $85,000 | $95,000 | $95,000 | $90,000 | $90,000 | $90,000 | $90,000 | $90,000 | $95,000 | $1,080,000 | $1,112,400 | $1,145,772 | $4,413,172 |
| COGS | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $12,000 | $12,000 | $12,000 | $48,000 |
| **Gross Profit** | $84,000 | $84,000 | $84,000 | $84,000 | $94,000 | $94,000 | $89,000 | $89,000 | $89,000 | $89,000 | $89,000 | $94,000 | $1,068,000 | $1,100,400 | $1,133,772 | $4,365,172 |
| | | | | | | | | | | | | | | | | $   - |
| **Expenses** | | | | | | | | | | | | | | | | $   - |
| Google Domains (email accounts) | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | 1,800 | 1,800 | 1,800 | 7,200 |
| Building Start (software) | $781 | $781 | $781 | $781 | $781 | $781 | $781 | $781 | $781 | $781 | $781 | $781 | 9,372 | 9,372 | 9,372 | 37,488 |
| Indeed | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | 4,200 | 4,200 | 4,200 | 16,800 |
| Tenet Financial (401k administrator) | $135 | $135 | $135 | $135 | $135 | $135 | $135 | $135 | $135 | $135 | $135 | $135 | 1,620 | 1,620 | 1,620 | 6,480 |
| Xero (accounting software) | $22 | $22 | $22 | $22 | $22 | $22 | $22 | $22 | $22 | $22 | $22 | $22 | 264 | 264 | 264 | 1,056 |
| GoCardless | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | 2,400 | 2,400 | 2,400 | 9,600 |
| Cable | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | 960 | 960 | 960 | 3,840 |
| Tablets (Verizon - Lease and internet) | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | 4,200 | 4,200 | 4,200 | 16,800 |
| Adobe (software) | $40 | $40 | $40 | $40 | $40 | $40 | $40 | $40 | $40 | $40 | $40 | $40 | 480 | 480 | 480 | 1,920 |
| State Farm | $555 | $555 | $555 | $555 | $555 | $555 | $555 | $555 | $555 | $555 | $555 | $555 | 6,660 | 6,660 | 6,660 | 26,640 |
| PlanHub | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | $160 | 1,920 | 1,920 | 1,920 | 7,680 |
| Liberty Mutual | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | 14,400 | 14,400 | 14,400 | 57,600 |
| Minnesota Life | $35 | $35 | $35 | $35 | $35 | $35 | $35 | $35 | $35 | $35 | $35 | $35 | 420 | 420 | 420 | 1,680 |
| Rent | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | 25,200 | 25,200 | 25,200 | 100,800 |
| Utilities | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | 8,400 | 8,400 | 8,400 | 33,600 |
| FreedomLife (Health insurance employees) | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | 52,200 | 52,200 | 52,200 | 208,800 |
| Littwin (CPA) Requires Court Approval | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | 3,600 | 3,600 | 3,600 | 14,400 |
| 401K Contribution | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | 4,200 | 4,200 | 4,200 | 16,800 |
| Payroll (incl taxes) | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | $58,000 | 696,000 | 696,000 | 696,000 | $2,784,000 |
| Field Parking + Gas | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | 30,000 | 30,000 | 30,000 | 120,000 |
| Frank Lyon | $5,000 | $5,000 | $5,000 | | | $2,500 | | | | | | | $   - | $   - | $   - | 17,500 |
| Michael Colvard | $1,500 | $1,500 | $1,500 | | | $750 | | | | | | | $   - | $   - | $   - | 5,250 |
| Team-Building Events | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | 9,000 | 9,000 | 9,000 | 36,000 |
| Equipment Repair & Replace | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| Certifications & Association Dues | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| **Total Expenses** | $81,608 | $81,608 | $81,608 | $75,108 | $75,108 | $78,358 | $75,108 | $75,108 | $75,108 | $75,108 | $75,108 | $75,108 | 901,296 | 901,296 | 901,296 | $3,627,934 |
| | | | | | | | | | | | | | | | | $   - |
| **Net Profit** | $2,392 | $2,392 | $2,392 | $8,892 | $18,892 | $15,642 | $13,892 | $13,892 | $13,892 | $13,892 | $13,892 | $18,892 | $166,704 | $199,104 | $232,476 | $737,238 |
| | | | | | | | | | | | | | | | | $   - |
| **Beginning Cash Balance Net of Reserves** | $75,000 | $15,850 | $9,200 | $2,550 | $2,400 | $2,249 | $1,349 | $1,199 | $2,049 | $899 | $748 | $598 | 448 | $   - | $   - | 114,539 |
| Customer Payments | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $82,000 | $1,008,600 | $1,033,815 | $1,059,660 | $4,086,075 |
| **Cash Balance Before Reserve Contribution** | $75,392 | $16,242 | $9,592 | $9,442 | $9,292 | $5,891 | $8,241 | $8,091 | $8,941 | $7,791 | $7,640 | $7,490 | 107,752 | 132,519 | 158,364 | 572,680 |
| | | | | | | | | | | | | | | | | $   - |
| Reserve Contribution | $55,000 | $2,500 | $2,500 | $2,500 | $2,500 | $   - | $2,500 | $1,500 | $3,500 | $2,500 | $2,500 | $2,500 | | | | 80,000 |
| Reserve Balance (Goal=$80,000) | $55,000 | $57,500 | $60,000 | $62,500 | $65,000 | $65,000 | $67,500 | $69,000 | $72,500 | $75,000 | $77,500 | $80,000 | 80,000 | 80,000 | 80,000 | N/A |
| **Cash Balance After Reserve Contribution** | $20,392 | $13,742 | $7,092 | $6,942 | $6,792 | $5,891 | $5,741 | $6,591 | $5,441 | $5,291 | $5,140 | $4,990 | 107,752 | 132,519 | 158,364 | 492,680 |
| | | | | | | | | | | | | | | | | $   - |
| Secured Debt Payment | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | $4,542 | 54,506 | 54,506 | 54,506 | 218,025 |
| **Cash Balance After Secured Payment Net of Reserve** | $15,850 | $9,200 | $2,550 | $2,400 | $2,249 | $1,349 | $1,199 | $2,049 | $899 | $748 | $598 | $448 | 53,246 | 78,013 | 103,858 | 274,655 |
| Unsecured Debt Payment | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | 53,246 | 78,013 | 103,858 | 235,116 |
| **Cash Balance Net of Reserve After Secured & Unsecured Payment** | $15,850 | $9,200 | $2,550 | $2,400 | $2,249 | $1,349 | $1,199 | $2,049 | $899 | $748 | $598 | 448 | $   - | $   - | $   - | $   - |

**Secured Debt monthly payment calculation**

| HomeTrust Bank | Column1 | Column2 | Column3 |
|---|---|---|---|
| Collateral value | $  193,408 | | |
| At 6% interest | $  4,542 | | |
| | | | |
| | Total Claims | Total Est Distr | Percentage |
| Unsecured Claims | $1,628,750 | $235,116 | 14.4% |

| Claimant | Claim Amount | Estimated Total Distribution Years 2 through 4 | |
|---|---|---|---|
| Home Trust Bank | $926,210 | $133,702 | 14.4% |
| Cen-Tex Air Balance, LLC | $62,164 | $8,974 | 14.4% |
| JPMorgan Chase Bank, N.A. | $26,797 | $3,868 | 14.4% |
| JPMorgan Chase Bank, N.A. | $36,795 | $5,311 | 14.4% |
| American Express Natl Bank | $906 | $131 | 14.4% |
| Verizon Wireless | $1,964 | $283 | 14.4% |
| Randy Eastlack | $25,000 | $3,609 | 14.4% |
| | | | |
| American Express | $12,449 | $1,797 | 14.4% |
| Fora Financial Advice, LLC | $68,628 | $9,907 | 14.4% |
| SBA EIDL | $495,000 | $71,455 | 14.4% |
| WeBank | $14,925 | $2,154 | 14.4% |

Assumptions

Beginning year 3, billings and collections increase 3% and 2.5%, respectively, net of increases in expenses